IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
TAMAI L. BARRAGER,              )
                                )
              Plaintiff,        )
                                )
vs.                             )    Case No. 06-1150-WEB
                                )
MICHAEL J. ASTRUE,¹             )
Commissioner of                 )
Social Security,                )
                                )
              Defendant.        )
_____ )
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

---

¹On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

1

conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to

step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

Administrative law judge (ALJ) George M. Bock issued his decision on October 28, 2005 (R. at 14-33).  At step one, the ALJ found that plaintiff had not performed substantial gainful

activity since February 6, 2002 (R. at 19).  At step two, the ALJ found that plaintiff has severe impairments of fibromyalgia and/or chronic fatigue syndrome, depression, dysthmia, an anxiety/panic disorder, agoraphobia, and mild degenerative disc disease of the lumbar spine (R. at 19).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After establishing plaintiff's RFC, the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 32).  At step five, the ALJ found that plaintiff could perform other work with jobs existing in significant numbers in the national economy.  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 32-33).

**I.  In making his RFC findings, did the ALJ give proper consideration to the opinions of treating physicians?**

The ALJ made the following RFC findings in this case:

> Upon careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work, or work which requires lifting up to 10 pounds on an occasional basis, but lifting no more than nominal weight on a frequent basis, sitting up to 30 to 45 minutes at a time not to exceed 6 hours of an 8-hour day, and standing and/or walking up to 15 minutes at a time not to exceed 2 hours of an 8 hour day. The claimant has nonexertional limitations precluding all rope, ladder, and scaffold climbing, and more than occasional stair climbing, balancing, stooping, kneeling, crouching, and crawling. She should also avoid exposure to temperature extremes,

> wetness, and humidity, and to work hazards
> such as unprotected heights. As a result of
> her mental disorder, the claimant is
> moderately limited in the ability to maintain
> attention and concentration for extended time
> periods, work in coordination with or
> proximity to others without being distracted
> by them, and interact appropriately with the
> general public. She is moderately limited in
> the ability to respond to work pressures in a
> normal work setting.

(R. at 22).

In his decision, the ALJ discounted the opinions of Dr. Parris, Dr. Ruhlman, and Dr. Ragsdale, all treating physicians, and gave the "greatest weight" to the opinion of Dr. Winkler, a medical expert who never saw the plaintiff (R. at 31). Plaintiff alleges that the ALJ improperly disregarded their opinions.

Dr. Parris stated on April 27, 2000 that he did not feel that plaintiff was capable of gainful employment at this time and for an indefinite period of time, noting that she is not able to function and in chronic pain (R. at 314). On November 27, 2002, Dr. Parris diagnosed fibromyalgia, and stated that plaintiff is not able to work because of her pain and weakness and inability to be up and active for a prolonged period of time that an employer might require (R. at 317).

In his decision, the ALJ stated that Dr. Parris' opinion is "not supported by his objective records, but appears based primarily on the claimant's subjective reports" and was therefore not given controlling weight (R. at 27). The ALJ further stated

that Dr. Parris' opinion was not consistent with the orthopedic findings of only mild degenerative disc disease in the lumbar spine and normal cervical spine X-rays and was therefore not given substantial weight (R. at 27).

On November 8, 2002, Dr. Ruhlman, a rheumotologist, stated that plaintiff has fibromyalgia, sleep disorder and back pain and has to rest intermittently and needs the ability to have multiple unexcused absences (R. at 375). On October 10, 2003, he opined that due to fibromyalgia and other impairments she needs to be able to rest intermittently and needs the ability to have multiple unexcused absences. He stated that with increased activity, plaintiff has exhaustion, increased pain, and leg twitching. Therefore, he expected her to be unemployable for at least one year (R. at 381).

On April 7, 2005, Dr. Ruhlman filled out a fibromyalgia syndrome medical assessment form. It indicates that he had been treating plaintiff every 3-4 months since January 12, 2001. Clinical findings and/or testing indicated that plaintiff met 15 of 18 tender points for fibromyalgia. He opined that plaintiff would be unable to perform routine, repetitive tasks at a consistent pace, meet strict deadlines, perform fast paced tasks, and could not be exposed to work hazards. He indicated that her drowsiness and fatigue, severe pain, and adverse effects of medication would impact her ability to work. Specifically, he

noted that her symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks. He opined that she could stand/walk for less than 2 hours and sit 4 hours in an 8 hour day. He also indicated that plaintiff would need over 10 unscheduled breaks during an 8 hour day for 5-10 minutes because of muscle weakness, chronic fatigue and pain (R. at 514-518).

On August 4, 2005, Dr. Ruhlman filled out a second fibromyaglia medical assessment form with similar opinions to those set forth on the first assessment form. However, on the second form, Dr. Ruhlman indicated that plaintiff could stand/walk for less than 2 hours and sit for 2 hours in an 8 hour day. He indicated that plaintiff would need over 10 unscheduled breaks during an 8 hour day for 30 minutes because of chronic fatigue, pain, and the adverse effects of medication (R. at 587-591). On both forms, Dr. Ruhlman indicated that plaintiff would miss more than 4 days a month from work due to her impairments and treatment (R. at 518, 591).

Dr. Ragsdale filled out a medical source statement-physical on the plaintiff on April 6, 2005. Dr. Ragsdale found plaintiff could stand/walk for 4 hours in an 8 hour workday, and sit for 4 hours in an 8 hour workday. Dr. Ragsdale indicated that due to pain or fatigue, plaintiff would need to lie down 6 times during an 8 hour day for 20-30 minutes, and that her pain and medication

8

made her sleepy and groggy.  Dr. Ragsdale indicated that her opinions were based on the treating relationship with the patient, the nature of patient's diagnosed impairments (including fibromyalgia, chronic fatigue, sleep disorder, chronic low back pain, degenerative disc disease, and migraine headaches), a review of medical records from other sources, and credible subjective complaints from the patient (R. at 528-529).

The ALJ discounted the opinions of Dr. Ruhlman, noting that his opinion is not supported by his "objective records" and is contradicted by the opinions of other treating sources (R. at 28).  Likewise, the ALJ discounted the opinions of Dr. Ragsdale because lumbar spine x-rays showed only mild degenerative disc disease without disc protrusion or stenosis.  The ALJ therefore found that Dr. Ragsdale's opinions are not supported by her "objective findings" and are contradicted by Dr. Ruhlman's opinions (R. at 30).  As noted earlier, the ALJ also discounted the opinions of Dr. Parris because his opinions were not supported by objective records, and were not consistent with orthopedic findings of only mild degenerative disc disease in the lumbar spine and normal cervical spine x-rays (R. at 27).

As courts have noted repeatedly, the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity.  Gilbert v. Astrue, 2007 WL 1068104 at *4 (10th Cir. Apr. 11, 2007); Brown v.

Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006); Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004); Munsinger v. Barnhart, D. Kan. No. 01-1332-MLB, report and recommendation at 21, July 22, 2002; affirmed by district court Aug. 26, 2002); Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000); Anderson v. Apfel, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999). Because fibromyalgia is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition. Priest, 302 F. Supp.2d at 1213.

In the case of Gilbert v. Astrue, plaintiff argued that the ALJ, having found fibromyalgia to be a severe impairment, failed to sufficiently consider that condition, and the functional limitations that can be caused by it. 2007 WL 1068104 at *4. The court agreed with the plaintiff, noting the following:

> Here, although the ALJ acknowledged Dr. Kassan's conclusion in 2000 that Ms. Gilbert probably had a fibromyalgia-type syndrome, as well as his initial, clinical examination finding "multiple tender points over the spine, hips, knees and ankles," Aplt.App., Vol. 3 at 1005, the ALJ did not otherwise address that impairment, or the limitations it may cause, in determining to give the 2001 opinion minimal weight. Instead, the ALJ relied expressly on objective test results showing only mild degeneration in her back and knees and other test results indicating her peripheral neuropathy was also

10

> mild...Regarding the 2003 opinion, the ALJ again relied on a lack of objective findings with respect to her back, as well as two instances where she failed to complain to Dr. Kassan about back pain. While it was appropriate for the ALJ to assess the objective findings with respect to Ms. Gilbert's individual joints when considering her claims of disability based on arthritis and disc disease, the lack of objective test findings noted by the ALJ is not determinative of the severity of her fibromyalgia. See Sarchet, 78 F.3d at 306; Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir.2003) (reversing where ALJ failed to give controlling weight to treating physician opinion of disability based on fibromyalgia and "effectively required 'objective' evidence for a disease that eludes such measurement").

1007 WL 1068104 at *4.

A patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia. Brown v. Barnhart, 182 Fed. Appx. at 773; Glenn, 102 F. Supp.2d at 1259. The record clearly demonstrates that plaintiff was diagnosed on 14 of 15 occasions with a minimum of 13 and as many as 18 out of 18 tender points from 2001 through 2005 (R. at 359, 360, 361, 362, 363, 364, 365, 366, 367, 374, 379, 380, 462, 533, 576). Most of the trigger point findings were not discussed by the ALJ in his decision; however, the ALJ himself acknowledged that plaintiff's fibromyalgia was a severe impairment. Given the undisputed medical evidence of the existence of fibromyalgia, it was clear error for the ALJ to discount the opinions of 3 treating physicians because their opinions were not supported by objective

11

findings, records, or testing. Therefore, the case shall be remanded in order for the ALJ to give proper consideration to the opinions of the 3 treating physicians in their assessment of plaintiff's ability to work in light of all her impairments, including fibromyalgia.

The ALJ noted that Dr. Ragsdale's opinion is contradicted by the opinion of Dr. Ruhlman (R. at 30). Although there were some differences in certain RFC findings, Dr. Ruhlman opined that plaintiff would require more than 10 breaks to rest in an 8 hour day due to her fatigue, pain, adverse effects of medications and/or muscle weakness (R. at 517, 590), while Dr. Ragsdale found that plaintiff would need to lay down or recline 6 times in an 8 hour day because of sleepiness/grogginess from pain and medication (R. at 529). Thus, their opinions are entirely consistent with the opinion of Dr. Parris that plaintiff cannot work because of her pain and weakness and inability to be up and active for a prolonged period of time that an employer might require (R. at 317). The opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). In this case, 3 treating physicians have opined that plaintiff is unable to work due to her need to rest repeatedly

and her inability to be active for an 8 hour workday. Furthermore, Dr. Winkler, a medical expert who reviewed the records and offered an opinion as to plaintiff's RFC, provided no opinion regarding plaintiff's need to rest during an 8 hour workday; therefore, no medical opinion contradicts the opinions of the 3 treating physicians that plaintiff cannot be up and active for an 8 hour workday without frequent periods of rest. The court is concerned with the necessarily incremental effect of each individual medical report or opinion by a treatment provider on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other treatment providers, and the need for the ALJ to take this into consideration.  Lackey v. Barnhart, 127 Fed. Appx. 455, 459 (10th Cir. April 5, 2005).  The vocational expert testified that if a person had to take rest periods beyond normal breaks, three to four times a day, no work would be available (R. at 624).  This information must be carefully considered by the ALJ when the case is remanded.

    The court also finds numerous errors in the ALJ's findings regarding plaintiff's mental RFC.  The ALJ gave greater weight to the opinions of Dr. Anderson, a psychologist, than that of Dr. Ruhlman, in making his mental RFC findings (R. at 30).  Dr. Anderson, in his evaluation, stated the following:

> Given that Ms. Barrager's physical symptoms
> are likely exacerbated by her depression and

13

>anxiety, there are psychological factors that
>interfere with her ability to keep a regular
>work schedule.

(R. at 571). Dr. Anderson then stated on the RFC form that plaintiff had a moderate limitation in her ability to maintain a regular work schedule (R. at 573). However, that limitation does not appear in the ALJ's RFC findings, nor was it posed to the vocational expert (R. at 22, 622). The ALJ clearly erred by not including this limitation in plaintiff's RFC, or, in the alternative, by failing to offer a legitimate explanation for not including this limitation in plaintiff's RFC.

The ALJ stated in his decision that Dr. Winkler, to whom he gave greater weight in making plaintiff's physical RFC findings (R. at 31), "did not comment on psychological limitations" (R. at 18). That is clearly contradicted by the record. Dr. Winkler in fact stated the following in his answers to the interrogatories:

>Note, however, her psychiatric problems seem
>quite severe & I suspect, although not my
>area of expertise, that her psychiatric may
>impact her so significantly that she would
>not be able to work.

(R. at 558). Not only did the ALJ err by misstating the record, but the ALJ also erred by ignoring relevant medical opinion evidence. An ALJ must evaluate all evidence in the case record that may have a bearing on the determination of disability, including opinions from medical sources about issues reserved to the Commissioner. <u>Lackey v. Barnhart</u>, 127 Fed. Appx. at 457-458.

14

Furthermore, on August 4, 2005, Dr. Ruhlman filled out a medical source statement-mental in which he opined that plaintiff was markedly limited in 7 of 20 categories, and moderately limited in 10 other categories (R. at 583-586). The ALJ stated that Dr. Ruhlman's mental RFC opinions were not consistent with "those of any other source" (R. at 28). However, Dr. Ruhlman's opinions appear to be consistent with the opinions expressed by Dr. Winkler, which were improperly ignored by the ALJ.

The ALJ also stated that, as a rheumatologist, Dr. Ruhlman is "not qualified" to evaluate plaintiff's mental limitations even though the ALJ conceded that Dr. Ruhlman administered psychotropic medications to the plaintiff (R. at 28). However, 20 C.F.R. § 404.1527(a)(2) indicates that medical opinions are statements from physicians, psychologists and other acceptable medical sources that include physical or mental restrictions. A treating physician is qualified to give a medical opinions as to a claimant's mental state as it relates to their inability to work and the ALJ may not discredit their opinion on the ground that the treating physician is not a psychiatrist. Nguyen v. Barnhart, 170 Fed. Appx. 471, 473 (9th Cir. March 8, 2006); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Dr. Ruhlman, a physician, is qualified to evaluate plaintiff's mental limitations.

In summary, the court finds that numerous errors were made in evaluating the medical opinion evidence regarding plaintiff's mental RFC limitations. These errors require that the case be remanded in order for the evidence to be properly considered.

**II. Did the ALJ err in his credibility analysis and in the weight given to her daily activities?**

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency. Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of

claimant's testimony he did not believe and why. <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. <u>Hardman v. Barnhart</u>, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. <u>White</u>, 287 F.3d at 909-910.

When this case is remanded, the ALJ will need to reexamine plaintiff's credibility after it has reexamined the medical evidence, as set forth above. The court will also address some of the issues raised concerning the ALJ's credibility analysis.

First, the ALJ clearly placed great weight on plaintiff's daily activities, including her care of a number of children (R. at 23-24). Although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of pain testimony, <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. <u>Thompson</u>, 987 F.2d at 1490; <u>see</u> <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983)(the fact that claimant

17

admitted to working in his yard, performed a few household tasks, worked on cars, and took occasional trips was found by the court to be activities not conducted on a regular basis and did not involve prolonged physical activity; while this evidence may be considered along with medical testimony in the determination of whether a party is entitled to disability benefits, such diversions do not establish, without more evidence, that a person is able to engage in substantial gainful activity).  One does not need to be utterly or totally incapacitated in order to be disabled.  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).  Therefore, consideration of plaintiff's daily activities can and should be considered when analyzing plaintiff's claims of pain, but should not be relied on, in the absence of other evidence, to establish that a person is able to engage in substantial gainful activity.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing and other chores.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.

Draper, 425 F.3d at 1131.

Dr. Anderson noted that, "in general, Ms. Barrager alleged symptoms and functional limitations seem somewhat inconsistent with her actual abilities" (R. at 570). This was relied on by the ALJ in questioning plaintiff's credibility (R. at 24). However, even if Ms. Barrager is not fully credible, Dr. Anderson also found that Ms. Barrager's physical symptoms are likely exacerbated by her depression and anxiety; thus, there are psychological factors that interfere with her ability to keep a regular work schedule.[2]  Dr. Anderson then made this observation:

> However, Ms. Barrager's physical symptoms may interfere less with preferred activities, such as caring for her children.

(R. at 571). This clearly underlines the need for caution in concluding that plaintiff's daily activities can be relied on to establish that she is able to engage in substantial gainful activity, especially in light of the opinions of 3 treating physicians. Even if the plaintiff is not as limited as she alleges, the key is whether the evidence establishes that plaintiff has the ability to work an 8 hour workday 5 days a

---

[2]As noted previously, this limitation was not included by the ALJ in his RFC findings for the plaintiff.

week.  As Dr. Anderson noted, plaintiff's physical limitations may interfere less with the care of her children than with her ability to work on a full time basis.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on April 23, 2007.

>           s/John Thomas Reid
>           JOHN THOMAS REID
>           United States Magistrate Judge